IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KENNETH FORTUNE,                    )
                                    )
                Plaintiff,          )
                                    )
        vs.                         )    Civil Action No. 04 - 377
                                    )
C.O. BASEMORE, Guard,               )    District Judge Terrence F.
C.O. LITCHARD, Guard;               )    McVerry
C.O. WIRT, Sergent; C.O. CRAIG,     )
Guard; C.O. HARMON, Sergeant;       )
KAREN PATTERSON, Accountant;        )
JEAN W. SCOTT, Business             )
Manager; C.O. Craig, Guard;         )
C.O. Nicolletti; and                )
Lieutenant Agostino,                )
                                    )
                Defendants.         )

## MEMORANDUM OPINION AND ORDER

        Plaintiff, Kenneth Fortune, an inmate incarcerated at the
State Correctional Institution at Greene, Pennsylvania (SCI-
Greene), commenced this action pursuant to the Civil Rights Act of
1871, 42 U.S.C. § 1983.  Named as Defendants are present and/or
former employees of the Pennsylvania Department of Corrections
(DOC).  Plaintiff claims that Defendants have violated his rights
as protected by the First, Fifth, Eighth and Fourteenth Amendments
of the United States Constitution and federal law as set forth in
28 U.S.C. § 1915 by:  1) restricting his ability to have his "core
legal material" in his RHU cell; opening his legal mail outside of
his presence; ordering him to see a psychologist; issuing him
retaliatory false misconducts; subjecting him to a retaliatory
transfer; denying him exercise, showers, and hygiene materials;

changing his migraine medication; denying him access to the law library, refusing to allow him to make copies and improperly deducting his funds from his prison account.[1]

## A. Standard of Review

Defendants have filed a motion for summary judgment pursuant to Fed. R. Civ. Proc. 56 (doc. no. 85). Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, ". . . the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth ". . . specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind.

---

1. Pursuant to court order dated September 21, 2007, only Plaintiff's claims that occurred on or after March 4, 2002, remain pending in this action (doc. on. 76).

2

<u>Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" <u>Brown v. Grabowski</u>, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting <u>Anderson</u>, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. <u>Anderson</u>, 477 U.S. at 249-50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed. R. Civ. Proc. 56 (e); <u>Celotex Corp.</u>, 477 U.S. at 324; <u>J.F. Feeser,Inc., v. Serv-A-Portion, Inc.</u>, 909 F.2d 1524, 1542 (3d Cir. 1990).

## B. Liability under Section 1983

Plaintiff's complaint seeks recovery under 42 U.S.C. § 1983. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements: 1) the alleged misconduct must have been committed by a person acting under color of state law; and 2) the defendants' conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or

laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

The issues at bar concern whether Defendants have violated any of Plaintiff's constitutional rights.  Plaintiff seeks recovery against the Defendants based on violations of the First, Fifth, Eighth and Fourteenth Amendments of the United States Constitution as well as federal law as set forth in 28 U.S.C. § 1915.  His claims are discussed separately below.

## C. First Amendment

The First Amendment provides as follows.

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. Amend. I.

### 1.  Access to Courts

The right of access to the courts is guaranteed by the First Amendment of the United States Constitution.  In Christopher v. Harbury, 536 U.S. 403 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts.  Specifically, the Supreme Court held that, in order to

state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Christopher, 536 U.S. at 415.

The Court explained that the first requirement mandated that the plaintiff specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the underlying claim was being pursued independently. Christopher, 536 U.S. at 417. In this regard, the statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that the "the 'arguable' nature of the underlying claim is more than hope." Id. The second requirement requires a Plaintiff to clearly allege in the Complaint the official acts that frustrated the underlying litigation. Third, a Plaintiff must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation. Id. at 414.

Here, Plaintiff has not identified any legal action he was unable to pursue as a result of Defendant's alleged actions. While he identifies three legal actions allegedly impacted by Defendants' actions, Plaintiff, a frequent litigator, was not

hindered in the slightest in pursuing any of these. First, he claims that he was unable to meet certain court deadlines in his court cases in the Middle District and the Court of Appeals for the Third Circuit. However, the docket and opinions in each of these cases shows otherwise. *See* <u>Fortune v. Bitner</u>, *et al.*, Civil Action No. 01-0111, 2006 WL 2796158 (M.D. Pa. 2006), *aff'd*, 2008 WL 2766156 (3d Cir. 2008) and <u>Fortune v. Horn</u>, *et al.*, Civil Action No. 01-1288. Plaintiff filed various motions for extensions in these actions, all of which were granted, and was able to file extensive court pleadings in support of his claims. Thus, these actions can not be the basis of any access to courts claim.

Plaintiff also claims that Defendants' actions caused the Superior Court of Pennsylvania to dismiss the appeal of his petition filed under the Pennsylvania Post Conviction Relief Act (PCRA). Again, a review of this case show otherwise. In this regard, Plaintiff's third PCRA petition, filed on January 17, 2002, was dismissed as untimely because Plaintiff's direct appeal became final on September 25, 1990 and he failed to appeal his first and second PCRA petitions. He claims he was hindered in his efforts to pursue his third PCRA petition because he was unable to file a "Finley" letter. However, the Superior Court acknowledged that Plaintiff's first PCRA was denied based on his counsel's Finley letter. Thus, it appears that the Superior Court was aware of the Finley letter. Second, Petitioner could have filed his PCRA

petition at any time and then filed a copy of his Finley letter. Thus, Defendants' actions in removing Plaintiff's excess papers did not impact his ability to submit a timely PCRA petition. Third, Plaintiff can not identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation. Specifically, Plaintiff had an available remedy under 28 U.S.C. § 2254 for attacking his state court conviction. Thus, he can not show a violation of his access to courts with regards to the Superior Court's order affirming the denial of his PCRA petition.[2] Consequently, Defendants are entitled to summary judgment as to Plaintiff's access to courts claims.

     2.   <u>Free Speech</u>

Plaintiff maintains that Defendants violated his First Amendment right to free speech by opening his legal mail outside of his presence. The Court of Appeals for the Third Circuit has held that "a pattern and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech. Such a practice chills protected expression and may inhibit the inmate's ability to speak,

---

2. In addition, Plaintiff makes mention of a petition for writ of mandamus he had prepared to file in the Court of Common Pleas to require Defendants to give him back his core legal materials. See Complaint, ¶¶ 16-17. This can not be the basis of any access to courts claim because there is no basis for a mandamus action as there is no mandatory duty owed to Plaintiff to be allowed to have unfettered access to all of his "core" legal papers.

protest, and complain openly, directly, and without reservation with the court." Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995) (abrogated on other grounds by Lewis v. Casey, 518 U.S. 343 (1996)). The Court of Appeals for the Third Circuit recently reaffirmed Bieregu when it declared the following.

> A state pattern and practice, or, as is the case here, explicit policy, of opening legal mail outside the presence of the addressee inmate interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech. The practice deprives the expression of confidentiality and chills the inmates' protected expression, regardless of the state's good-faith protestations that it does not, and will not, read the content of the communications. This is so because "the only way to ensure that mail is not read when opened ... is to require that it be done in the presence of the inmate to whom it is addressed." [Bieregu] at 1456 (citing Wolff v. McDonnell, 418 U.S. 539, 576- 77, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).

Jones v. Brown, 461 F.3d 353, 359 (3d Cir. 2006).[3]

Plaintiff's free speech claim concerns the following

---

3. As an initial matter, the Court notes that the issue of whether opening, but not reading, legal mail outside an inmate's presence violates the inmate's First Amendment rights currently is the subject of a Petition for Writ of Certiorari before the United States Supreme Court. See Smith v. Al-Amin, 2008 WL 3540277. This Petition argues that the Supreme Court decision in Wolff v. McDonnell, which is the basis for the position taken by the Court of Appeals for the Third Circuit, merely is dicta and that the Supreme Court never has stated such a right recognized by the First Amendment. Moreover, DOC's current policy on privileged mail currently is on appeal before the Court of Appeals for the Third Circuit. See Fontroy v. Beard, Civil Action No. 07-2446.

event.  On September 29, 2005, an envelope containing an order issued by Judge Vanaskie of the United States District Court for the Middle District of Pennsylvania was delivered to Plaintiff's housing unit.  It appeared to Plaintiff that this envelope had been opened and taped shut prior to being delivered to the housing unit.  Because the envelope was marked as privileged/legal mail when it was delivered to the housing unit, pursuant to DOC policy, the officers on the housing unit required Plaintiff's signature on the privileged correspondence log prior to delivering the mail to Plaintiff.  When Plaintiff refused, the officers refused to give him the letter.  Plaintiff filed Grievance No. 131525 about this issue.

Plaintiff's free speech claim is that Defendants are liable for opening his legal mail outside of his presence.  His claim fails for several reasons.  First, it is arguable that an order from a United States District Judge, which, by definition is a public document subject to public review (unless under seal by court order) ever can be the subject of a First Amendment violation as it does not contain any privileged information.  Second, one such instance of opening one piece of mail can not state a violation as caselaw makes clear that only a state pattern and practice of opening legal mail outside the presence of the addressee inmate impinges upon the inmate's right to freedom of speech.  The courts agree that an isolated incident, without any

evidence of improper motive or resulting interference with the inmate's right to counsel or to access to the courts, does not give rise to a constitutional violation.[4]  Third, even if Plaintiff's claim does allege a violation of his First Amendment rights, a holding this court specifically does noy make, Defendants are entitled to qualified immunity.  *See* Jones v. Brown, 461 F.3d at 365.  Consequently, Defendants are entitled to summary judgment as to Plaintiff's free speech claim.

    3.  Retaliation

        Plaintiff also claims that Defendants violated his First Amendment rights by retaliating against him for filing grievances and lawsuits.  It is well settled that retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution, which is actionable under section 1983.  Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990).  However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the

---

4.  *See, e.g.*, Johnson v. Wilkinson, 229 F.3d 1152, 2000 WL 1175519, 2 (6th Cir. Aug. 11, 2000); Gardner v. Howard, 109 F.3d 427, 431 (8th Cir.1997); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir.1990); Morgan v. Montanye, 516 F.2d 1367, 1370-71 (2d Cir.1975), *cert. denied*, 424 U.S. 973 (1976).

protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *See* <u>Mt. Healthy City Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977); <u>Anderson v. Davila</u>, 125 F.3d 148, 163 (3d Cir. 1997). If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. <u>Mt. Healthy</u>, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." <u>Rauser</u>, 241 F.3d at 334. Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. *See* <u>Cochran v. Morris</u>, 73 F.3d 1310, 1317 (4th Cir. 1996); <u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996); <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995).

Under the first element, a plaintiff must show that he engaged in constitutionally-protected activity. Here, Plaintiff alleges that Defendants retaliated against him because he filed numerous grievances and lawsuits. A prisoner's ability to file

grievances and lawsuits against prison officials is a constitutionally-protected activity for purposes of a retaliation claim. *See* Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution); Woods, 60 F.3d at 1165 (prison officials may not retaliate against an inmate for complaining about a guard's misconduct). Thus, Plaintiff's allegations satisfy the first element of a retaliation claim.

Under the second element of a retaliation claim, a plaintiff must allege that he was subjected to adverse actions by a state actor. A plaintiff can satisfy the second requirement by demonstrating that the "adverse" action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *See* Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). With respect to the second element, Plaintiff claims that certain Defendants conspired to issue false misconducts against him and he was found guilty of these various misconducts and received several increments of disciplinary custody in the RHU. He claims that he was denied anticipated postage, denied copying and library privileges, and denied exercise and shower time when he was confined in the RHU. Further, he claims that he was transferred to SCI-Greene as a result of his litigation activities. These allegations may be sufficient to demonstrate the second element of

a retaliation claim. *See* <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2002) (holding that prisoner's allegation that he was falsely charged with misconduct in retaliation for filing complaints against a correctional officer sufficiently alleged a retaliation claim); <u>Allah</u>, 229 F.3d at 225 (holding that an allegation that a prisoner was kept in administrative segregation to punish him for filing civil rights complaints stated a retaliation claim).

The third element of a retaliation claim requires a plaintiff to demonstrate that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. This "motivation" factor may be established by alleging a chronology of events from which retaliation plausibly may be inferred. <u>Tighe v. Wall</u>, 100 F.3d 41, 42 (5th Cir. 1996); <u>Goff v. Burton</u>, 91 F.3d 1188 (8th Cir. 1996); <u>Pride v. Peters</u>, 72 F.3d 132 (Table), 1995 WL 746190 (7th Cir. 1995).

Here, Plaintiff claims that on April 30, 2002, he received a briefing schedule from the Court of Appeals for the Third Circuit in <u>Fortune v. Horn</u>, Civil Action No. 01-1288 and on May 8, 2002, he was granted *in forma pauperis* by the United States District Court for the Middle District of Pennsylvania in <u>Fortune v. Bitner</u>, Civil Action No. 01-0111. He claims that Defendants retaliated against him after he received these court documents. As an initial matter, this court notes that the first alleged retaliatory action did not occur until almost six weeks after

13

Plaintiff received his court papers.  A plaintiff must establish that there was, at least, a temporal proximity between the constitutionally-protected activity to suggest a causal link sufficient to satisfy the third prong of his retaliation claim. *See* <u>Allah v. Al-Hafeez</u>, 208 F.Supp.2d at 535.  The temporal proximity between Plaintiff's receiving his court documents and the alleged retaliatory actions at issue is tenuous at best. Notwithstanding, even assuming that Plaintiff's claim is sufficient to establish causation, Defendants prevail because they adequately have shown that they would have taken the same actions without the unconstitutional factors.  Plaintiff's retaliation claims are discussed below.

a.  <u>Misconduct Nos. A364867 and A364873</u>

Plaintiff first asserts that Defendants retaliated by issuing misconduct nos. A364867 and A364873.  In this regard, C.O. Basemore issued misconduct number A364867 to Plaintiff on June 3, 2002 for refusing to obey an order to report to the office of the psychologist, Mr. Klebe, pursuant to a mandatory pass (doc. no. 86-2, p. 18).  At the misconduct hearing, Plaintiff stated that he did not want to go to the appointment and that he had a right to refuse medical treatment.  The hearing examiner found Plaintiff guilty and imposed a sentence of 15 days Disciplinary Custody (DC) time (doc. no. 86-2, p. 19).  In his decision upholding the misconduct on appeal, the Chief Hearing Examiner (CHE) found that Plaintiff was

guilty of refusing to obey a lawful order to go to an appointment, not for declining medical care and noted that Plaintiff could have refused treatment once he arrived at the appointment as ordered (doc. no. 86-2, p. 26). Thus, the misconduct was not issued due to Plaintiff's refusing medical treatment but, instead, was issued for Plaintiff's failure to obey an order. This is sufficient evidence to conclude that the misconduct would have issued notwithstanding Plaintiff's receipt of his legal papers in April and May of 2002 and notwithstanding his refusal of medical treatment. *See* <u>Carter v. McGrady</u>, 292 F.3d 152 (3d Cir. 2002) (holding that, even if prison officials were motivated by animus to jailhouse lawyers, there was sufficient evidence of the plaintiff's misconduct offenses to conclude that the misconducts would have issued notwithstanding his jailhouse lawyering).

On June 19, 2002, Sgt. Wirt issued misconduct number A364873 to Plaintiff for threatening an employee with bodily harm and using abusive, obscene, or inappropriate language. According to the misconduct, Fortune came to the bubble window and said he was missing property when he came back from the RHU. Sgt. Wirt told Plaintiff that they did not have any of his property and Plaintiff responded by saying: "I'm tired of this shit. That Uncle Tom bitch up there and you CO's are going to pay for this." Wirt ordered Plaintiff to lock up and Plaintiff said: "I'll get you all for this one, all that uncle Tom bitch does is listen to you other

15

cracker CO's and that will stop" (doc. no. 86-2, p. 28). At the misconduct hearing, Plaintiff stated that he only wanted to put in a grievance about his missing property from his release from the RHU. The hearing examiner found Plaintiff guilty of using abusive, obscene, or inappropriate language and dismissed the charge for threatening an employee with bodily harm and imposed a sentence of 30 days DC time (doc. no. 86-2, p. 29). In so concluding, the hearing examiner believed Sgt. Wirt's report over Fortune's denial that he made the comments and this decision was sustained on appeal.

In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979). "It is the hearing examiner's providence, and not this court's, to gauge the credibility of evidence and witnesses at a misconduct hearing." Rauso v. Vaughn, 2000 WL 873285, *8 (E. D. Pa. 2000) (citing Massachusetts Correctional Inst. v. Hill, 472 U.S. 445, 455-56 (1985) (holding that the requirement of a written statement for the reasons relied upon by the disciplinary board "does not imply that a disciplinary board's factual findings ... are subject to second-guessing upon review").

Here, this Court can not say that Defendants' decisions to discipline Plaintiff for his violations of prison policy was not within their broad discretion to assure prison safety and promote compliance with prison rules. Consequently, Defendants have carried their burden of showing that the misconducts would have issued regardless of any retaliatory intent. Thus, his claim that Defendants retaliated against him by issuing misconducts fails.

b. <u>Removing Plaintiff's Excessive Legal Documents</u>

Plaintiff further claims that Defendants retaliated against him by removing eight boxes of his legal documents and by trying to coerce him into signing a confiscation list concerning his documents. In this regard, on Jule 16, 2002, while Plaintiff was confined in the RHU, he was told that, pursuant to DOC policy, he was allowed only to keep his personal property, including legal records, that could be stored in one (1) foot locker and two (2) record center boxes (doc. no. 86-7, p. 32). He was given four hours to sort through his documents and was offered to take up to fifteen days to ship his excess property home. Plaintiff refused to sign the confiscation slip, which noted an excess of eight (8) boxes of legal miscellaneous papers (doc. no. 94-9, p. 5). An incident report further indicates that Plaintiff refused the extra time and stated: "I was hoping you'd destroy the property so I could get a new trial due to mistrial" (doc. no. 86-7, p. 45).

DOC policy, as set forth in DC-ADM 815, provides limitations on accumulation of inmate property within a cell. These regulations specifically provide that an inmate may keep property in his or her cell that can be contained in four (4) records boxes or in one (1) footlocker and two (2) records boxes. *See* DC-ADM 815 Section 3, ¶(B)(1). The policy further provides that an inmate in DC status is permitted storage of property as set forth in DC-ADM 801. *See* DC-ADM Section 3, ¶(B)(2). DC-ADM 801 provides that DC inmates are allowed property that will fit into one standard sized record box. DC-ADM Section 6, ¶(A)(5).

As noted to Plaintiff on the response to Grievance No. 23048: "The fact that these officers chose to heed policy while someone else let you accumulate this much material does not indicate that they are attempting to impede your access to courts" (doc. no. 86-7, p. 44). Nor was Plaintiff in any way denied his access to courts as his excess property was stored to enable him to have access to his legal materials on the exchange basis allowed by DOC policy (doc. no. 94-11, pp. 6-7). As Defendants actions in limiting Plaintiff's personal property were dictated by DOC policy, Plaintiff's retaliation claim in this regard also fails.

c.  <u>Transfer to SCI-Greene</u>

Plaintiff further claims that his transfer to SCI-Greene on August 7, 2002 was retaliatory in nature. However, prison records show that Plaintiff was transferred to SCI-Greene due to a

separation from staff Officer Basemore, his history of assaultive behavior and his poor prison adjustment at SCI-Camp Hill (doc. no. 96-2, p. 2). Defendants have demonstrated that their actions in transferring Plaintiff to SCI-Greene actions were in accordance with a legitimate penological interest. *See* Burks v. Romine, 85 Fed. Appx. 274, 276, 2003 WL 23173709 at *2 (3d Cir. Dec. 2, 2003) (finding that the plaintiff's own pleadings demonstrated such hostility and animosity towards prison staff members to establish a legitimate penological interest supporting a transfer). Thus, Plaintiff can not prevail on his retaliation claim as to his transfer to SCI-Greene.

      d.   Opening of Legal Mail

      To the extent that Plaintiff is claiming that Defendants' alleged actions in opening his legal mail on September 29, 2005 were done in retaliation, this claim must fail. The only named defendants involved in this claim are Defendants Nicolletti and Agostino, the officers who handled the mail after it arrived on Plaintiff's housing unit. In his grievance, Plaintiff claims that the mail was opened in the Mailroom (doc. no. 86, Exhibit N) and that officers Nicolette and Johnson tried to coerce Plaintiff into signing a privileged communications log and refused to give Plaintiff his mail when he refused to sign.

      DC-ADM 803 provides DOC policy on Inmate Mail and Incoming Publications. In 2004, this policy provided that mail

from a court would be opened and inspected for contraband by the facility's mailroom staff; if no contraband was found, the contents were to be placed back into the envelope which then was taped or stapled shut and delivered to the inmate (doc. no. 86-3, p. 11). DOC policy further required an inmate to sign for any legal mail delivered to the block (doc. no. 86-6, p. 9).   In handling Plaintiff's mail, Defendants were following DOC procedure then in place for the handling of mail that was marked privileged when it arrived on the housing unit.   Thus, Defendants have met their burden of showing that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.   Accordingly, Defendants are entitled to summary judgment as to this claim.

e.   Failure to Provide Anticipated Postage

Next, Plaintiff complains that he was denied "anticipated postage" in retaliation for his litigious activities.[5] "Anticipated postage" is governed by DOC policy DC-ADM 803(VI)(C)(2)(a), which provides in relevant part as follows:

> An indigent inmate may anticipate on his/her account for legal mail and copying charges of up to $10.00 per month.   Under no circumstances shall the Business Manager/designee approve requests in excess of

_____

5.   To the extent Plaintiff is raising an access to courts claim, as stated earlier, he has not shown that he was denied the ability to pursue any of his legal claims due to Defendants' actions.   Thus, he can not state a claim for denial of access to courts due to any action in denying him anticipated postage.

> $10.00 per month. An inmate is responsible
> for managing his/her funds and monthly postage
> allowance to meet his/her legal needs.

DC-ADM 803(VI)(C)(2)(a) (doc. no. 86-3, p. 12). An inmate is deemed "indigent" if the combined balances of his/her facility account and any other accounts are $10.00 or less at all times during the 30 days preceding the date on which the inmate submits his request for anticipated postage. DC-ADM 803(IV)(H) (doc. no. 86-3, p. 3). In addition, inmates are permitted to mail ten one-ounce, first-class letters per month without cost. DC-ADM 803(VI)(A)(4) (doc. no. 86-3, p. 7).

Plaintiff filed two grievances regarding the denial of anticipated postage (doc. no. 86-5, pp. 1-12). In Grievance No. 131524 filed on October 4, 2005, Plaintiff complains about a letter to the Philadelphia Court System that was returned to him. In her response to Plaintiff's Grievance No. 131524, Defendant Jean Scott, Business Manager, informed Plaintiff as follows.

> I am in receipt of your remanded grievance
> 131524 dated October 4, 2005 where you state
> that you attempted to send a letter to the
> Philadelphia Court System and it was returned
> to you. It was returned to you the first time
> because the cash slip did not have 2
> signatures on it. It was returned to you
> again with a notation that it was not legal
> mail. You state the mail was going to an
> official of the court, which can easily be
> confirmed by referring to Royal v Durion.
>
> You need to review a copy of the DC ADM 803.
> Legal mail is defined as mail going to an
> elected or appointed federal, state or local
> official. It is also defined as mail going to

> an attorney who is engaged in an
> attorney/client relationship with the inmate
> addressee. Neither of these definitions apply
> to the person you were attempting to mail this
> letter to. You have been told numerous times
> that you are given 10 postage paid envelopes
> each month that you can use for this purpose.
> During the month of September 2005 you used
> only 3 of your 10 free envelopes. I am at a
> loss to understand why you would not want to
> use a free envelope as opposed to attaching a
> cash slip and having the postage deducted from
> your account.
>
> Your mail was processed according to the DC
> ADM 803, thus, this grievance is denied.

Doc. No. 86-5, p. 5.

Plaintiff's second grievance, No. 141843, dated January 23, 2006, complains that the mailroom manipulated prison policy for the purpose of denying him access to the courts. In her response to Plaintiff's Grievance No. 141843, Defendant Jean Scott, Business Manager, informed Plaintiff as follows.

> You state the mailroom staff denied you
> anticipated legal postage and as a result you
> were unable to be granted a motion for In
> Forma Pauperis by the courts.
>
> Please refer to a copy of the DC ADM 803, page
> 2, Section IV. H. where it defines an Indigent
> Inmate as: An inmate shall be deemed indigent
> if the combined balances of his/her facility
> account and any other accounts are $10.00 or
> less at all times during the 30 days preceding
> the date on which the inmate submits a request
> to a person designated by the Facility
> Manager. On January 5, 2006 your inmate
> account balance was $17.12. On January 9,
> 2006 you spent $16.96 at the commissary, thus,
> you are not considered indigent at this time
> and will not be considered indigent until
> February 5, 2006. It is your responsibility

22

> to manage your funds so that you have money
> for legal purposes.
>
> This grievance is completely without merit and
> therefore, denied.

Doc. No. 86-5, p. 11.

As the responses to Plaintiff's grievances make clear, Defendants' decisions concerning the denial of Plaintiff's anticipated postage were made in accordance with DOC policy. Thus, Defendants have met their burden of showing that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. Accordingly, Defendants are entitled to summary judgment as to this claim.

f. <u>Failure to Make Copies</u>

Next Plaintiff complains that on May 28, 2002, the librarian refused to allow him to make sufficient copies of his legal brief for the Court of Appeals for the Third Circuit in <u>Fortune v. Horn</u> at Civil Action No. 01-1228. Again, Plaintiff cannot make out any access to courts claim as to this case. Moreover, any claim of retaliation also fails.

Plaintiff filed Grievance No. 21660 on May 29, 2002 concerning this claim (doc. no. 94-4, p. 1). In response to Plaintiff's Grievance (doc. no. 94-4, p. 2), Plaintiff was informed that DOC policy limited photocopying to $10.00 per session. The librarian explained to Plaintiff that she could accommodate his

request if Plaintiff signed a cash slip and allowed her time to confirm that Plaintiff had the adequate funds to pay for photocopying over $10.00. Plaintiff refused to comply with this procedure. The response noted that Plaintiff could have had his copies the very next day had he complied with the procedure and had the ability to pay for them.

Again, the record makes clear that it is Plaintiff's actions, and not Defendants, that resulted in his inability to make his requested copies. The librarian's refusal to allow him to make copies over the ten dollar limit was made in accordance with DOC policy. Thus, Defendants have met their burden of showing that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. Accordingly, Defendants are entitled to summary judgment as to this claim.

g. Alleged Denial of Library Privileges

Next, Plaintiff claims that he was denied library privileges in retaliation for his litigation activities. In this regard, Plaintiff filed Grievance No. 22694 on June 6, 2002, wherein he complained that on June 1, 2002, his library privileges were terminated because he left a court order on his bed that needed copying in his Third Circuit case (doc. no. 94-5, p. 1). The Response to Plaintiff's grievance provides as follows.

> On the date in question you returned from the
> law library to P Block. Policy dictates that

24

> once you leave [the library], staff are under
> no obligation to let you back in. You were
> informed of this policy when you left. Ms.
> Basemore does not work in the law Library.
> She is a P-Block Officer. She was, by policy,
> under no obligation to send you back to the
> law library once you returned. In any case,
> you did return to the law library.
>
> The courts give you ample time to file an
> appeal. You had time before this deadline to
> file. Your grievance is denied.

Doc. No. 94-5, p. 2.

Again, the record makes clear that it was Plaintiff's actions, and not Defendants, that resulted in his library restriction. The officer's refusal to allow him back into the library after he had left was made in accordance with DOC policy. Thus, Defendants have met their burden of showing that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. Moreover, it appears that Plaintiff was indeed allowed back in the library later on that same date and, thus, had the opportunity to make his copies. Accordingly, Defendants are entitled to summary judgment as to this claim.

h. <u>Denial of Showers and Recreation</u>

Next, Plaintiff claims that he was denied showers and exercise from June 3, 2002 through June 18, 2002 while he was in the RHU serving his disciplinary time. In response to his grievance, it was noted that Plaintiff did not participate in his shower and exercise time because he was not standing at his cell

25

door with his light on and his cell in proper order as required by DOC RHU policy (doc. no. 94-7, p. 5).

Moreover, Defendants maintain records pertaining to prisoners in the RHU on DOC form DC-17X. Plaintiff's records indicate that Plaintiff routinely refused exercise and showers during the relevant stay in the RHU (doc. no. 86-7, pp. 11-30). (Id.). Plaintiff has not submitted any evidence to rebut these records. Thus, Defendants are entitled to summary judgment as to his claim that Defendants retaliated against him by refusing to allow him showers and recreation while he was in the RHU from June 3, 2002 through June 18, 2002.

i. Change of Migraine Medication

Plaintiff's final retaliation claim concerns the change of his migraine medication. In this regard, Plaintiff claims that after he was transferred to SCI-Greene, his migraine headache medication was changed from Cafergot to Midrin (doc. no. 94-15, p. 1). The response to Plaintiff's Grievance No. 29728 provides as follows.

> The PA's decision was based upon the Regional
> Medical Director's review. Cafergot is non-
> formulary and must be approved by the Regional
> Medical Director.[6] Also, your medical record

---

6. A formulary drug is one on a list of predetermined economical medications that a doctor may prescribe for a condition. A non-formulary drug is one that does not come within the approved list of medications but may nonetheless ultimately be prescribed if the formulary drugs prove to be ineffective. Rozzelle v.
(continued...)

> clearly reflects on 04-29-02 while at Camp
> Hill you told PA Sims "Midrin helps with
> headaches." Then on 05-13-02, you told PA
> Jones "Midrin does not help." My review of
> your MAR shows that you only took 3 Midrin,
> which is far less than the prescribed amount.
> These are scheduled medications, this they
> have addictive qualities requiring them to be
> monitored closely.
>
> PA Diggs was within her practicing guidelines
> to change your medication. You have a long
> history of non-compliance of exams, with the
> DC-462 Refusal of Medical Treatment Form to
> back this up.
>
> Based on the above information, this grievance
> is denied.

Doc. No. 94-15, p. 2.

Here, the record shows that the decision to change Plaintiff's medication was made in accordance with valid penological concerns. Consequently, Defendants have carried their burden of showing that his medication would have been changed to a non-formulary medication regardless of any retaliatory intent. Thus, Defendants are entitled to summary judgment as to this claim.[7]

### D. Eighth Amendment

---

6. (...continued)
Rossi, 2007 WL 2571935, *1 n. 1 (W.D.Pa. Aug.31, 2007).

7. Plaintiff cites the Fifth Amendment as a basis for liability in his Amended Complaint (doc. no. 60-2, p. 2). It is well settled that the Fifth Amendment applies only to the Federal Government. Because Defendants all are state actors, his due process claims will be analyzed under the Fourteenth Amendment, discussed below.

Next in his Complaint, Plaintiff asserts liability under the Eighth Amendment, which provides as follows.

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. Amend. VIII.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

In order to make out a prima facie case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994); Wilson, 501

28

U.S. at 297; Rhodes, 452 U.S. at 347. "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment. . . . To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'" Farmer, 114 S.Ct. at 1977 (quoting Wilson, 501 U.S. at 297).

The Supreme Court has explained that the first showing requires the court objectively to determine whether the deprivation of the basic human need was "sufficiently serious."

> [E]xtreme deprivations are required to make out a conditions of-confinement claim . . . . Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation.

Hudson v. McMillan, 503 U.S. 1, 112 S.Ct. 995, 999 (1992). The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Id. Accord Wilson, 501 U.S. at 297.

a.   Conditions of Confinement

Broadly construed, Plaintiff's complaint appears to claim that the denial of showers and recreation from June 3, 2002 through June 18, 2002 while he was confined in the RHU constitute cruel and unusual punishment in violation of his Eighth Amendment rights. First, as discussed above, DOC records show that Plaintiff's actions resulted in the denial of his showers and recreation for

this time period.  Moreover, it does not appear that the denial of exercise and showers for fifteen days could result in an Eighth Amendment violation.  *See, e.g.*, <u>Allebach v. Sherrer</u>, 2005 WL 1793726 (D.N.J. July 27, 2005) (holding that denial of running water, religious items, visitation, recreation, use of the telephone, mattress and clothing for thirty-six (36) days was not cruel and unusual punishment under the Eighth Amendment).  Thus, Defendants are entitled to summary judgment as to this claim.

      b.   <u>Adequate Medical Treatment</u>

      Plaintiff further claims that Defendants were deliberately indifferent to his medical needs when they changed his migraine headache medication from Cafergot to Midrin.  To the extent that he is raising an Eighth Amendment claim for failure to provide adequate medical care, this claim must fail for several reasons.  When claiming a denial of adequate medical care, an inmate must prove that he suffered from an objectively serious medical need.  A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  <u>Gaudreault v. Municipality of Salem</u>, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991); <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

Here, Plaintiff has failed to demonstrate that the Defendants were deliberately indifferent to his medical needs. The Supreme Court has held that a finding of deliberate indifference on the part of a prison official requires a showing that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The "deliberate indifference" standard for purposes of liability under section 1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 410 (1997). An official is not deliberately indifferent if "he fails to alleviate a significant risk that he should have identified." Id.

Moreover, deliberate indifference to a serious medical need of a prisoner is distinguishable from a negligent diagnosis or treatment of a medical condition; only the former conduct violates the Eighth Amendment. Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).

While Plaintiff argues that Cafergot was more effective in treating his symptoms, the fact that Plaintiff received a medication other than Cafergot, which he considered to be less effective, does not amount to a constitutional violation. While an intentional refusal to provide <u>any</u> medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable under the Eighth Amendment, the Eighth Amendment does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere. A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." <u>Layne v. Vinzant</u>, 657 F.2d 468, 473 (1st Cir. 1981). Mere disagreements over medical judgment do not state Eighth Amendment claims as there are typically several acceptable ways to treat an illness. <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990) (citations omitted). *Accord* <u>Young v. Quinlan</u>, 960 F.2d 351, 358 n.18 (3d Cir. 1992) (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state claim for relief under section 1983).

It is well known that using formulary drugs that are preferred over non-formulary drugs is normal for non-incarcerated individuals in HMOs or other similar health insurance coverage. If

such treatment is generally accepted for non-incarcerated individuals then, *a fortiori*, it cannot be said to be violative of the Eighth Amendment.

More importantly, all of the named Defendants are non-medical personnel and none were involved in the decision to change Plaintiff's headache medication. Non-medical defendants can not be liable for the denial of adequate medical treatment when an inmate is being treated by the prison doctor. *See, e.g.*, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993) (holding that warden can not be liable for failing to provide adequate medical care); <u>Thomas v. Zinkel</u>, 155 F.Supp.2d 408, 413 (E.D.Pa. 2001) (holding that prison authorities who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor). Thus, Defendants are entitled to summary judgment with respect to this claim.

## E. Fourteenth Amendment

As another basis of liability, Plaintiff claims that Defendants violated his rights as protected by the Fourteenth Amendment, which provides as follows.

> Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall

33

> any State deprive any person of life,
> liberty, or property, without due process
> of law; nor deny to any person within its
> jurisdiction the equal protection of the
> laws.

U.S. Const. Amend. XIV, §1.

    1.   Confinement in the RHU

As result of his misconducts, Plaintiff was confined in the RHU serving DC time for forty-five days. To the extent that Plaintiff claims that his confinement violated his rights as protected by the Due Process Clause of the Fourteenth Amendment, resolution of such claim is dictated by the United States Supreme Court's opinion in Sandin v. Conner, 515 U.S. 472 (1995). In Sandin, the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483 (emphasis added).

At issue in Sandin was whether the plaintiff's thirty-day detention in disciplinary custody in a Hawaii prison impacted any protectable liberty interest under the Fourteenth Amendment. The Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary

detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence. In finding that the prisoner's 30-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Supreme Court noted the following three factors: 1) the relatively short duration of the segregation; 2) the similarity between the conditions of confinement in disciplinary segregation and the conditions imposed upon other inmates; and 3) the lack of any direct collateral consequences affecting the length of the prisoner's underlying sentence. Applying this new test, the Supreme Court concluded that the prisoner in <u>Sandin</u> did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence.

According to his allegations, as a result of his two misconducts, Plaintiff received a total of 45 days of disciplinary custody. Employing the due process analysis announced in <u>Sandin</u>, the federal courts, including the United States Court of Appeals for the Third Circuit, have concluded that placement in restrictive confinement for periods of up to one year, and more, does not trigger a constitutionally protected liberty interest as it does

not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life. *See, e.g.*, <u>Griffin v. Vaughn</u>, 112 F.3d 703 (3d Cir. 1997) (it is not atypical to be exposed to conditions of administrative custody for periods as long as 15 months as such stays are within the expected parameters of an inmate's sentence); <u>Mackey v. Dyke</u>, 111 F.3d 460 (Unpublished Disposition), 1997 WL 179322 (6th Cir. 1997) (thirteen month detention in administrative segregation did not create a liberty interest), *cert. denied*, 118 S.Ct. 136 (Oct. 6, 1997); <u>Williams v. Craigie</u>, 110 F.3d 66 (Unpublished Disposition), 1997 WL 144240 (6th Cir. 1997) (at least thirteen months - no liberty interest); <u>Jones v. Fields</u>, 104 F.3d 367 (Unpublished Disposition), 1996 WL 731240 (10th Cir. 1996) (a plaintiff housed for fifteen months in administrative segregation failed to establish a liberty interest).

Under this authority, this Court must conclude that Plaintiff's forty-five day detention did not impose an atypical and significant hardship in relation to the ordinary incidents of his prison sentence sufficient to give rise to a protected liberty interest. Accordingly, Defendants' Motion should be granted to the extent that Plaintiff is raising a due process claim with respect to his conditions of confinement in the RHU.

2. <u>False Misconduct Reports</u>

Plaintiff also asserts that Defendants violated his constitutional rights by issuing groundless misconduct reports,

which resulted in his disciplinary custody in the RHU. A prisoner does not have a constitutional right to be free from being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest. Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988). In other words, the mere filing of false charges against an inmate does not constitute a *per se* constitutional violation. *Id*. Before the Supreme Court handed down its opinion in Sandin, the federal courts had determined that the filing of unfounded administrative charges against an inmate may result in a procedural due process violation only when such charges were not subsequently reviewed in a misconduct hearing. *Id*. at 952 (an allegation that a prison guard planted false evidence fails to state a claim where the procedural due process protections as required in Wolff v. McDonnell are provided) (citation omitted). Thus, even if false charges impaired a protected liberty interest, as long as prison officials granted the inmate a hearing and an opportunity to be heard, the filing of unfounded charges did not give rise to a procedural due process violation actionable under section 1983. *Accord* Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002); Jones v. Coughlin, 45 F.3d 677 (2d Cir. 1995); Franco v. Kelly, 854 F.2d 584, 587 (2d Cir. 1988); McClean v. Seclor, 876 F. Supp. 695 (E.D. Pa. 1995).

In light of the Supreme Court's ruling in <u>Sandin</u>, however, Plaintiff has not even demonstrated that he had a constitutionally protected liberty interest that was offended by Defendants' actions in allegedly issuing false misconduct reports. Thus, it is unlikely that the filing of false charges, even in the absence of a misconduct hearing, would state a constitutional claim on the facts before this Court. *See* <u>Strong v. Ford</u>, 108 F.3d 1386 (Unpublished Opinion), 1997 WL 120757 (9th Cir. 1997) (the alleged making of a false charge, however reprehensible or violative of state law or regulation, does not constitute deprivation of a federal right protected by 42 U.S.C. § 1983 when it does not result in the imposition of an atypical hardship on the inmate in relation to the ordinary incidents of prison life).

Here, however, Plaintiff was afforded a misconduct hearing and, thus, had the opportunity to confront and challenge the testimony offered in support of the misconduct reports. That is all he is entitled to under the Due Process Clause. <u>Smith</u>, 293 F.3d at 654.[8]

## F. Deductions from Plaintiff's Inmate Account

---

8.  In his Amended Complaint, Plaintiff alleged that he has been treated differently than other prisoners in his ability to possess his legal property (Am Compl. ¶ 48) (doc. no. 60-2, p 10). Plaintiff has not submitted any evidence to support this allegation. Thus, he can not recover under any theory of an alleged violation of his equal protection rights.

Plaintiff's last claim is that Defendants have deducted monies from his account in violation of federal law, 28 U.S.C. § 1915, which pertains to proceedings allowed to proceed *in forma pauperis* (IFP). Specifically, 28 U.S.C. § 1915(b) provides in relevant part as follows.

(b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of--

(A) the average monthly deposits to the prisoner's account; or

(B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C.A. § 1915(b).

In addition, 28 U.S.C. § 1915(f) provides as follows.

(f)(1) Judgment may be rendered for costs at the conclusion of the suit or action as in other proceedings, but the United States shall not be liable for any of the costs thus

incurred. If the United States has paid the cost of a stenographic transcript or printed record for the prevailing party, the same shall be taxed in favor of the United States.

(2)(A) If the judgment against a prisoner includes the payment of costs under this subsection, the prisoner shall be required to pay the full amount of the costs ordered.

(B) The prisoner shall be required to make payments for costs under this subsection in the same manner as is provided for filing fees under subsection (a)(2).

(C) In no event shall the costs collected exceed the amount of the costs ordered by the court.

28 U.S.C. § 1915(f).

Since its enactment, the Courts of Appeals for the various circuits have upheld the PLRA against a variety of constitutional challenges. *See e.g.*, <u>Taylor v. Delatoore</u>, 281 F.3d 844, 848 (9th Cir. 2002) (holding that § 1915(b) does not violate the right of access to the courts or rights under First Amendment, Due Process Clause or Equal Protection Clause; <u>Singleton v. Smith</u>, 241 F.3d 534, 539 (6th Cir. 2001) (upholding constitutionality of 28 U.S.C. § 1915(f)); <u>Murray v. Dosal</u>, 150 F.3d 814, 817 (8th Cir. 1998) (concluding that the PLRA fee requirements do not employ suspect classifications, deprive prisoners of the right to court access, or violate rights to equal protection); <u>Tucker v. Branker</u>, 142 F.3d 1294 (D.C. 1998); <u>Shabazz v. Parsons</u>, 127 F.3d 1246 (10th Cir. 1997); <u>Norton v. Dimazana</u>, 122 F.3d 286 (5th Cir. 1997); <u>Mitchell v. Farcass</u>, 112 F.3d 1483 (11th Cir. 1997); <u>Roller v.</u>

<u>Gunn</u>, 107 F.3d 227 (4th Cir. 1997), *cert. denied*, 522 U.S. 874 (1997); <u>Nicholas v. Tucker</u>, 114 F.3d 17, 21 (2d Cir. 1997); <u>Hampton v. Hobbs</u>, 106 F.3d 1281, 1284-85 (6th Cir. 1997) (holding that § 1915(b) does not violate the right of access to the courts or rights under First Amendment, Due Process Clause, Equal Protection Clause, or Double Jeopardy Clause finding that "prisoners asserting civil claims in federal court have never been guaranteed a 'free ride.' ").

DD-ADM 005 (doc. no. 86-4, Ex. J) provides DOC policy with respect to the collection of inmate debts and provides, in relevant part, as follows.

### B. Federal Court Orders & Filing Fees

Facilities will collect Federal Court costs and filing fees in accordance with the language contained in the order.

DC-ADM ¶VI(B).

### C. State Court Orders & Filing Fees

. . .

2.  If a court enters an order requiring the assessment of filing fees, the business office shall comply with the order.

3.  Initial partial payment deductions shall be sent to the court immediately. Subsequent monthly deductions shall be paid in accordance with the court order accompanied by appropriate paperwork reflecting the correct case name and number, the inmate name and number, and the amount of payment.

4. Partial payments: Following the initial court ordered payment the business office will:

a. deduct from the inmate's account monthly payments for 20% of the preceding month's income provided the account balance exceeds $10.00; and

b. send the payment to the prothonotary as directed by the court. The court may direct that payments be made monthly or that they be held until sufficient funds have been collected to satisfy the debt.

DC-ADM ¶VI(C).

### G. Monies Owed to the Department

1. Inmate Charges for Damages.

Charges assessed for damages will be determined in accordance with Department policy DC-ADM 801, "Inmate Discipline."

2. Fees for Costs Awarded by a Court

Any fees or costs awarded against an inmate in conjunction with a court case will be collected in accordance with Section VI.I. below.

DC-ADM ¶VI(G).

### I. Precedence of Collections

1. If an inmate owes any money as described in this policy, other than a child support obligation, a maximum of 50% shall be collected to satisfy the debts, provided the inmate's account balance exceeds $10.00.

. . .

DC-ADM ¶VI(I).

The record reflects that, since his arrival at SCI-Greene, the institution has deducted money from Plaintiff's Inmate Account for filing fees in relation to two federal cases in which Plaintiff had been granted IFP status in Civil Action Nos. 99-0831 and 01-0111 (doc. no. 86-4, pp. 1-42) and for $1310.03 in costs assessed against Plaintiff in Civil Action No. 98-1724 (doc. no. 94-18, p. 1). Plaintiff claims that he filed two grievances with respect to the deduction of monies from his account: Grievance Nos. 58868 and 61120 (Am. Compl. ¶ 47); however, Plaintiff attached only the paperwork for Grievance No. 58868 in his response to Defendants' Motion for Summary Judgment (doc. no. 94-19).

In Grievance No. 58868, Plaintiff complains about two deductions made from his account in July of 2003 (doc. no. 94-19, p. 1). The response to this Grievance provides as follows.

> Policy states that an inmate's account can be charged up to 50% of the incoming monies for fines/damages and up to 20% for legal fees, but no more than 50% total.
>
> You received a money order in the amount of $40.00 and inmate payroll in the amount of $15.12, which totals $55.12. Fines/damages were deducted from your account in the amount of $16.54 (30% of $55.12) and informa pauperis fees (legal fees) were deducted in the amount of $11.20 (20% of $55.12). This is a total deduction of $27.56, which is ½ or 50% of the $55.12.

43

> According to policy we have made the
> appropriate deductions, this grievance is
> denied.

Doc. No. 94-19, p. 2.

In his "Motion in Opposition to Summary Judgment" Plaintiff makes clear that he is complaining about the deduction of 30 percent from his account for the assessment of $1310.03 in costs in Civil Action No. 98-1724 (doc. no. 93). Plaintiff has attached a copy of an Assessment of Inmate Account dated August 13, 2001, which provides that an initial payment of $23.25 will be assessed immediately and thereafter, 30% of Plaintiff's monthly income will be taken for payment of the assessed legal fees (doc. no. 94-18, p. 1). The PLRA requires that costs be collected from a prisoner in the same way provided for recovering filing fees, *i.e.*, 20 percent of the preceding month's income as long as an inmate's account has a balance of $10.00. 28 U.S.C. § 1915(f)(2)(B).[9]

Defendants do not address this issue in their Motion for Summary Judgment. Instead, they address only the deduction of the IFP filing fees from Plaintiff's account. There is insufficient information in the record for the court to analyze this claim. Thus, this issue remains to be resolved in this action.

---

9. The Court notes that 28 U.S.C. section 1915(f)(2)(B) references subsection "(a)(2)." It appears that this is a typographical error as the relevant section is 28 U.S.C. § 1915(b)(2).

With respect to the filing fee deductions, Defendants point out that, on all but one of the dates where fee deductions occurred, the amount deducted from Plaintiff's account was exactly 20 percent or was less than 20 percent of the total deposits into Plaintiff's account in the preceding 30 days. On May 24, 2004, $6.05 was deducted from Fortune's account. Defendants claim that this amount was 20% of the total three deposits ($14.40, $7.20, and $8.64) made into Fortune's account since the last deduction on November 24, 2003 deduction. However, the account does not reflect a minimum of $10.00 in the 30 days preceding the deduction. Even assuming that the May 24, 2004, deduction was not made in accordance with 28 U.S.C. § 1915(b)(2), Plaintiff is not entitled on this claim for several reasons.

First, it is unclear whether Plaintiff exhausted his administrative remedies with respect to this deduction. Second, and most important, Plaintiff suffered no damages with respect to this deduction. The record shows that Plaintiff routinely used his inmate account for postage, library copies and commissary. He has not shown any deprivation he suffered as a result of the deduction. As in Plaintiff's free speech claim, liability with respect to this claim would require a pattern or practice of improper deductions, which certainly is not the case here. Thus, Defendants are entitled to summary judgment as to any claim regarding the deduction of federal filing fees from Plaintiff's account. *Cf.*

Losee v. Maschner, 113 F.Supp.2d 1343 (S.D. Iowa 1998) (no constitutional violation when prison made one mistake in deducting fees from inmate's account and inmate suffered no damage as a result).

**ORDER**

**AND NOW**, this 29th day of September, 2008;

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (doc. no. 85) is **GRANTED.** Defendants did not address Plaintiff's claim that 30% deduction from his account for costs violates 28 U.S.C. § 1915(f); thus, that claim is undetermined and remains pending in this action.

It is further **ORDERED** that this action is remanded back to Magistrate Judge Lisa Pupo Lenihan for further pre-trial proceedings with respect to the remaining claim.

S/ Terrence F. McVerry

Terrence F. McVerry
United States District Judge

cc: Kenneth Fortune
AY-9297
SCI Greene
175 Progress Drive
Waynesburg, PA 15370

Douglas B. Barbour
Email: dbarbour@attorneygeneral.gov

Magistrate Judge Lisa Pupo Lenihan