IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH FORTUNE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KAREN PATTERSON, Accountant; and )<br>JEAN W. SCOTT, Business Manager, )<br>)<br>Defendants. ) | Civil Action No. 04-377<br><br>Judge Terrence F. McVerry<br>Magistrate Judge Lisa Pupo Lenihan |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons stated below, it is respectfully recommended that Defendants' Second Motion for Summary Judgment (Doc. No. 101) be granted.

### II. REPORT

Plaintiff Kenneth Fortune (hereinafter: Plaintiff), an inmate incarcerated at the State Correctional Institution at Frackville, Pennsylvania (hereinafter: SCI-Frackville), commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.[1] Originally named as Defendants were present and/or former employees of the Pennsylvania Department of Corrections (DOC).[2] Plaintiff claimed that Defendants violated his rights as protected by the

---

[1] Plaintiff filed this suit on March 11, 2004, while he was incarcerated at the State Correctional Institution at Greene, Pennsylvania (hereinafter: SCI-Greene). See generally Compl. (Doc. No. 1).

[2] The caption of this case has been amended to reflect that of the several original defendants, only Karen Patterson and Jean W. Scott remain.

-1-

First, Fifth, Eighth and Fourteenth Amendments of the United States Constitution and federal law as set forth in 28 U.S.C. § 1915 by: 1) restricting his ability to have his "core legal material" in his RHU cell; 2) opening his legal mail outside of his presence; 3) ordering him to see a psychologist; 4) issuing him retaliatory false misconducts; 5) subjecting him to a retaliatory transfer; 6) denying him exercise, showers, and hygiene materials; 7) changing his migraine medication; 8) denying him access to the law library; 9) refusing to allow him to make copies; and 10) improperly deducting his funds from his prison account.  See generally Am. Compl. (Doc. No. 60-2).  A partial motion to dismiss was granted in this case on September 21, 2007. See Mem. Order Granting Mot. to Dismiss (Doc. No. 76).  Defendants filed a motion for summary judgment on February 14, 2008.  See Doc. No. 85.  This was granted by United States District Judge Terrance McVerry on September 29, 2008.  See Mem. Order Granting Defs.' Mot. for Summ. J. (Doc. No. 97).  The sole remaining issue in this case is Plaintiff's allegation of wrongful deductions from his prison account, which Defendants failed to address in their first motion for summary judgment.  See generally Defs.' Mot. for Summ. J. (Doc. No. 85).

With the leave of this Court, Remaining Defendants Karen Patterson and Jean Scott (hereinafter: Remaining Defendants) filed a second motion for summary judgment on October 16, 2008, addressing Plaintiff's sole remaining claims.  See Defs.' Second Mot. for Summ. J. (Doc. No. 101).  The undisputed facts surrounding this claim are as follows.

In 1998 Plaintiff filed a civil action in the United States District Court for the Middle District of Pennsylvania.  See Fortune v. Horn, No. 98-1724 (M.D.Pa. Oct. 25, 2000).[3]  Plaintiff

---

[3]The specific information recited by this Court concerning Fortune v. Horn, No. 98-1724, was not contained in either of the Defendants' statements of material facts, (Doc. No. 86 Doc. No. 102) or in Plaintiff's Statement of Material Facts (Doc. No. 114).  Rather, this Court

was unsuccessful in his suit, and the defendants in that case moved for costs on February 16, 2001.  See Defs.' Mot. for Costs, Horn, No. 98-1724 (Doc. No. 189); see also Bill of Costs, Horn, No. 98-1724 (Doc. No. 190).  Plaintiff failed to respond to the motion, or to the brief subsequently filed by the defendants.  United States District Judge Richard P. Conaboy, who presided over the case, treated the motion as uncontested, and granted it on April 25, 2001, assessing costs in the amount of $1310.03 against the Plaintiff.  See Order Granting Costs, Horn, 98-1724 (Doc. No. 202).

Correspondence dated August 13, 2001, was sent to Plaintiff from the business office of the State Correctional Institution at Camp Hill, Pennsylvania (hereinafter: SCI-Camp Hill), informing him that his prisoner account was being assessed "$1310.03 for payment of fines/costs for legal fees" for the case.[4]  See Defs.' Second Mot. for Summ. J., Ex. 1 (Doc. No. 101-2), at 2.  The correspondence stated that Plaintiff's monthly income was to be deducted at a rate of thirty percent, and that Plaintiff had fifteen days to appeal the amount of the assessment.  Id.  Plaintiff did so on August 24, 2001, arguing that his account was assessed without due process and that the judgment of the suit was not yet final.  See id. at 3.  This appeal was returned unprocessed on September 5, 2001, by SCI-Camp Hill business manager David S. Maeyer.  See id. at 4.  Mr.

---

examined the docket sheet for that case on the PACER system.  See generally Docket, Horn, No. 98-1724.  Due to its age, the on-line docket for that case does not contain links to all of the filings.  However, it does contain links to that case's defendants' brief for costs, and Judge Conaboy's order granting costs.  See Defs.' Brief in Supp. to the Mot. for Costs, Horn, No. 98-1724 (Doc. No. 200); see also Order Granting Costs, Horn, No. 98-1724 (Doc. No. 202)  This Court hereby takes judicial notice of those documents, as well as that civil action's docket sheet.

[4]The correspondence was signed by Accounting Assistant Denise M. Shade.  Plaintiff was housed at SCI-Camp Hill at the time that the assessment was made against his prisoner account.  See Defs.' Second Mot. for Summ. J., Ex. 1 (Doc. No. 101-2), at 2.  Ms. Shade was not named as a defendant in this suit.

Maeyer advised Plaintiff that 1) the form DC-141, used by Plaintiff to appeal the assessment, could not be used to appeal a federal court order; 2) in order to appeal the order, Plaintiff must contact Judge Conaboy directly; 3) the DOC's legal office had directed that SCI-Camp Hill assess the costs against Plaintiff's prisoner account; and 4) that thirty percent of Plaintiff's monthly income would continue to be taken from Plaintiff's account until the balance was paid in full.[5]  See id.

In August of 2003,[6] while incarcerated at SCI-Greene, Plaintiff filed grievance number 58868, claiming that deductions being made from his prisoner account were improper under the Prisoner Litigation Reform Act, 28 U.S.C. § 1915 *et seq* (hereinafter: PLRA).[7]  See  Defs.' Second Mot. for Summ. J., Ex. 2 (Doc. No. 101-2), at 2.  On August 14, 2003 this grievance was reviewed by Remaining Defendant Jean W. Scott.  Ms. Scott denied the grievance, stating that the deductions from Plaintiff's prisoner account were in conformance with DOC policy.  See id. at 3.  Specifically, in the month in question, Plaintiff had received total a total income of $55.12.  Twenty percent of that ($11.20) was deducted for "in forma pauperis fees (legal fees)" and thirty percent ($16.54) for "fines/damages," for a total of fifty percent.  See id.  This decision was appealed to the superintendent of SCI-Greene, who denied it on September 3, 2003, pursuant to

---

[5] Mr. Maeyer was not named as a defendant in this suit.

[6] This document is dated both August 4, 2003 and August 6, 2003.  Either date would put the grievance within a two-year time period after August 24, 2001, which is the latest day that Plaintiff could have become aware of the $1310.03 deduction made to his prisoner account.

[7] Plaintiff also used this grievance to contest the manner in which filing fees were being deducted from his account for other civil actions that he had filed, and for which he had been granted *in forma pauperis* status.  See  Defs.' Second Mot. for Summary Judgment, Ex. 2 (Doc. No. 101-2), at 2.  Plaintiff's claims in this case, with respect only to the deduction of those filing fees from his prisoner account, were dismissed on Defendants' first motion for summary judgment.  See  Mem. Order Granting Defs.' Mot. for Summ. J. (Doc. No. 97), at 45.

DC-ADM 005, the DOC policy concerning the collection of inmate debts. See id. at 4. A second appeal was made to the chief grievance officer of the DOC, and was denied on October 24, 2003. See id. at 5.

In addition to grievance 58868, Plaintiff filed grievance 611210, which also concerned deductions from his prisoner account for costs taxed against him for the 98-1724 civil action.[8] See Pl.'s Supplementary App., Ex. 1 (Doc. No. 116-2). Remaining Defendant Jean Scott denied this grievance as well, stating that the court order taxing Plaintiff for costs "clearly states that we are to deduct 30% of [Plaintiff's] incoming monies to repay [Plaintiff's] debt to the Commonwealth of Pennsylvania in the amount of $1310.03."[9] See id. at 4. Plaintiff appealed this decision to the superintendent of SCI-Greene, and was denied without explanation on September 18, 2003. Plaintiff made a second appeal to the DOC's chief grievance officer, and was denied on November 12, 2003.[10] See id. at 6.

Based on these facts, Plaintiff filed suit in United States District Court for the Western District of Pennsylvania on March 11, 2004, pursuant to the Civil Rights Act of 1871, 42 U.S.C.

---

[8]This is dated both August 27, 2003, and September 2, 2003. Plaintiff submitted the paperwork concerning this grievance to this Court on June 6, 2009. As such, it was not addressed in the order granting Defendant's first motion for summary judgment.

[9]As mentioned above, this Court has read the court order in question. This Court takes judicial notice that at no point does Judge Conaboy's order state the rate at which the taxed costs were to be deducted from Plaintiff's prisoner account. Indeed, contrary to the assertions of Remaining Defendant Scott, it does not explicitly allow the deduction of any money at all from Plaintiff's prisoner account as a method for collecting the aforementioned taxed costs.

[10]The chief grievance officer stated as justification for denial of Plaintiff's appeal that "[i]n forma pauperis status only insures [sic] that the filing fee for a court action that you initiated is waived." See Pl.'s Supplementary App., Ex. 1 (Doc. No. 116-2), at 6. This statement is clearly contrary to the plain meaning of the language of the PLRA on multiple points. See 28 U.S.C. § 1915; see also infra, Part II.B.2.

§ 1983.  Plaintiff alleged, *inter alia*, that Remaining Defendants violated Plaintiff's Due Process rights and the PLRA in their collection of costs from the 98-1724 case.  See Am. Cmpl. (Doc. No. 60-2), at 13.  This Court now addresses Remaining Defendants' motion for summary judgment regarding these claims.

      A.  Standard of Review

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, ". . . the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. . ." Fed.R.Civ.P. 56(c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case and for which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact.  Once that burden has been met, the non-moving party must set forth ". . . specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501

U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-52).  If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted.  Anderson, 477 U.S. at 249-50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form.  See Fed. R. Civ. Proc. 56(e); Celotex Corp., 477 U.S. at 324; J.F. Feeser,Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

   B. Analysis

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements: 1) the alleged misconduct must have been committed by a person acting under color of state law; and 2) the defendants' conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

   1. Due Process

Plaintiff claims that Remaining Defendants' actions in conjunction with funds deducted from his prisoner account for costs taxed against him in Civil Action 98-1724 violate his right to due process under the Fourteenth Amendment to the United States Constitution. See Am. Compl. (Doc. No. 60-2) at 13.  The Fourteenth Amendment provides, in part:

> All persons born or naturalized in the United States, and subject to

>  the jurisdiction thereof, are citizens of the United States and the
> State wherein they reside. No State shall make or enforce any law
> which shall abridge the privileges or immunities of citizens of the
> United States; nor shall any State deprive any person of life,
> liberty, or property, without due process of law; nor deny to any
> person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. XIV, § 1.

The courts of the Third Circuit have long held that inmates have a property interest in the funds in their prisoner accounts. See Reynolds v. Wagner, 128 F.3d 166, 179 (3d Cir. 1997). In order to determine whether a taking from an inmate account comports with Due Process, a court applies a three-part balancing test. See e.g., Matthews v. Eldridge 424 U.S. 319, 335 (1976). First, a court must consider the ". . . private interest that will be affected by the official action. . ." Id. Second, a court must examine ". . . the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. . ." Id. Third and finally, a court must consider ". . . the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id.

However, for the purposes of this motion, it is unnecessary for this Court to engage in the Matthews Due Process analysis. This is because Plaintiff has not shown that Remaining Defendants had any personal involvement in the original taking - i.e., the assessment against his account. As the record clearly indicates and Remaining Defendants correctly argue, the assessment against Plaintiffs account for $1310.03 was made on August 13, 2001 by Ms. Shade, when Plaintiff was still at SCI-Camp Hill. See Defs.' Second Mot. for Summ. J., Ex. 1 (Doc. No. 101-2), at 2. This is also when monthly deductions of Plaintiff's prisoner account for this

assessment began.  Id.  As such, Plaintiff has not demonstrated facts that, if proven true, would show that Remaining Defendants were involved in the original taking, and thus, even if the assessment of costs did not satisfy Due Process, Plaintiff's claim against Remaining Defendants would fail as a matter of law.

Plaintiff's issue with Remaining Defendants appears, instead, to be that they are allegedly deducting costs from his account at an unlawful rate, and the rate of the deductions is controlled by the PLRA, 28 U.S.C. § 1915.  As such, Plaintiff's claims against Remaining Defendants, insofar as they are based on Due Process, should be dismissed.  This Court turns now to Plaintiff's claims under the PLRA.

### 2. Rights Under PLRA

Plaintiff claims that Remaining Defendants' have deducted funds from his prisoner account in violation of federal law, 28 U.S.C. § 1915, which pertains to proceedings in which a prisoner is allowed to proceed *in forma pauperis* (hereinafter: IFP).  Specifically, 28 U.S.C. § 1915(b) provides in relevant part as follows.

> (b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of–
>
> (A) the average monthly deposits to the prisoner's account; or
>
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.
>
> (2) After payment of the initial partial filing fee, the prisoner shall

>be required to make monthly payments of 20 percent of the
>preceding month's income credited to the prisoner's account. The
>agency having custody of the prisoner shall forward payments
>from the prisoner's account to the clerk of the court each time the
>amount in the account exceeds $10 until the filing fees are paid.

Furthermore, 28 U.S.C. § 1915(f) provides:

>(f)(1) Judgment may be rendered for costs at the conclusion of the suit or
>action as in other proceedings, but the United States shall not be liable for
>any of the costs thus incurred. If the United States has paid the cost of a
>stenographic transcript or printed record for the prevailing party, the same
>shall be taxed in favor of the United States.
>
>(2)(A) If the judgment against a prisoner includes the payment of costs
>under this subsection, the prisoner shall be required to pay the full amount
>of the costs ordered.
>
>(B) The prisoner shall be required to make payments for costs under this
>subsection in the same manner as is provided for filing fees under
>subsection (a)(2).
>
>(C) In no event shall the costs collected exceed the amount of the costs
>ordered by the court.

28 U.S.C. § 1915(f).

In its face, the language of the statute suggests that all costs taxed against a prisoner-plaintiff that has been granted IFP status would be governed by the same provisions of the filing fees - i.e., after the calculation and payment of an initial amount, no more than twenty percent of a prisoner-plaintiff's monthly income can be deducted in order to pay those costs. This interpretation of the statutory meaning finds support within case law. For example, in <u>Whitfield v. Scully</u>, the United States Court of Appeals for the Second Circuit conducted an exhaustive analysis of the meaning and applicability of 28 U.S.C. § 1915 with respect to the taxing of costs

against an indigent prisoner.  See generally 241 F.3d 264 (2d Cir. 2001).  That court determined that, in cases "when judgment is entered against a prisoner and costs against the prisoner are assessed, § 1915(f)(2)(A) now requires that the prisoner pay the costs either in full, or in accordance with the payment process set forth in § 1915(b)(2)."[11]  Id. at 272.  As such, any costs assessed against a prisoner-plaintiff with IFP status by a United States District Court must be deducted from that plaintiff's prisoner account at a rate of no more than twenty percent of his or her monthly income.

Remaining Defendants admit that Plaintiff's account was assessed for $1310.03.  See Defs.'Br. in Supp. of Defs.' Second Mot. for Summ. J. (Doc. No. 103), at 6-7.  However, they argue that Plaintiff was liable to the Department of Corrections in this amount due to "fines and damages" assessed against him.  As such, under applicable DOC policy, they are entitled to deduct up to fifty percent of Plaintiff's monthly income in order to satisfy this debt.  See id. at 6-7.  Remaining Defendants point to the record of transactions in Plaintiff's prisoner account in order to show that deductions of twenty percent of Plaintiff's monthly income were made for what is labeled "legal fees", and an additional thirty percent was deducted for what is labeled "fines/damages."  See id.; see also Concise Statement of Material Facts not in Dispute, Ex. G (Doc. No. 86-4).

DC-ADM 005 (Doc. No. 86-4, Ex. J) provides DOC policy with respect to the collection

---

[11]The court of appeals noted that, although the language of section 1915(f) refers to section 1915(a)(2) for the manner of payment of costs, the reference appears to be a typographical error, and that section 1915(b)(2) actually contains the formula for calculating monthly payment amounts.  See Whitfield, 241 F.3d at 272.  This construction of the statute mirrors that of Judge McVerry in his order granting Defendants' first motion for summary judgment.  See Doc. No. 97, at 44 n.9.

of inmate debts and provides, in relevant part, as follows:

### B. Federal Court Orders & Filing Fees

Facilities will collect Federal Court costs and filing fees in accordance with the language contained in the order.

DC-ADM ¶VI(B).

### C. State Court Orders & Filing Fees

. . .

2. If a court enters an order requiring the assessment of filing fees, the business office shall comply with the order.

3. Initial partial payment deductions shall be sent to the court immediately. Subsequent monthly deductions shall be paid in accordance with the court order accompanied by appropriate paperwork reflecting the correct case name and number, the inmate name and number, and the amount of payment.

4. Partial payments: Following the initial court ordered payment the business office will: a. deduct from the inmate's account monthly payments for 20% of the preceding month's income provided the account balance exceeds $10.00; and b. send the payment to the prothonotary as directed by the court. The court may direct that payments be made monthly or that they be held until sufficient funds have been collected to satisfy the debt.

DC-ADM ¶VI(C).

### G. Monies Owed to the Department

1. Inmate Charges for Damages.

Charges assessed for damages will be determined in accordance with Department policy DC-ADM 801, "Inmate Discipline."

2. Fees for Costs Awarded by a Court

Any fees or costs awarded against an inmate in conjunction with a court case will be collected in accordance with Section VI.I. below.

DC-ADM ¶VI(G).

### I. Precedence of Collections

> 1. If an inmate owes any money as described in this policy, other than a child support obligation, a maximum of 50% shall be collected to satisfy the debts, provided the inmate's account balance exceeds $10.00.
>
> . . .

DC-ADM ¶VI(I).

In the case *sub judice*, it is clear from the docket sheet that Plaintiff had been granted IFP status in the 98-1724 action. See Order Granting Pl.'s Mot. for IFP, Horn, No. 98-1724 (Doc. No. 113)  It is also clear from that docket and the order of Judge Conaboy that costs were assessed against Plaintiff in the amount of $1310.03. See  Order Granting Costs, Horn, No. 98-1724 (Doc. No. 202) .  Furthermore, the record shows that Plaintiff's prisoner account was assessed $1310.03 on August 13, 2001.  See Defs.' Second Mot. for Summ. J., Ex. 1 (Doc. No. 101-2), at 2.  Additionally, the correspondence with respect to grievances 58868 and 611210 lend credence to the conclusion that deductions were made from Plaintiff's prisoner account at a rate of greater than twenty percent of Plaintiff's monthly income in order to satisfy this assessment.  See Defs.' Second Mot. for Summ. J., Ex. 1 (Doc. No. 101-2); see also Pl.'s Supplementary App. Ex. 1 (Doc. No. 116-2).

Given the evidence of the record, it is apparent to this Court that a reasonable trier of fact could determine that the costs taxed against Plaintiff by Judge Conaboy in civil action 98-1724 were deducted in a manner that was unlawful under the PLRA, in spite of Remaining Defendants' assertion that such deductions were made pursuant to DOC policy.  However, even if this is true, Remaining Defendants' motion for summary judgment should be granted for the following reason.

As stated above, in order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements: 1) the alleged misconduct must have been committed by a person acting under color of state law; and 2) the defendants' conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt, 451 U.S. at 535. With respect the second prong of this test, it is insufficient for a plaintiff to show merely that a federal law has been violated by a defendant - the violated law must confer a right. Put another way, a plaintiff in a section 1983 action must show the violation of a federal right, not just a federal law. See Pa. Pharmacists Ass'n v. Houstoun., 283 F.3d 531, 535 (3d Cir. 2002) (en banc).

In M.L.B. v. S.L.J., the Supreme Court of the United States recognized that, under most circumstances, there is no Constitutional right for an indigent person to proceed *in forma pauperis*. See 519 U.S. 102, 114-16 (1996). The exception to that general rule is when a plaintiff is a member of a suspect class for equal protection purposes. See id. at 116. In Abdul-Akbar v. McKelvie, the United States Court of Appeals for the Third Circuit has explicitly held that prisoners are not a suspect class for equal protection purposes. See 239 F.3d 307, 317 (3d. Cir. 2001). Furthermore, the United States Court of Appeals for the Fifth Circuit has recognized that there is no Constitutional right for a prisoner to proceed IFP under the PLRA in cases where the necessities of life "'including adequate food, clothing, shelter, and medical care'" are not at issue. See Atchison v. Collins, 288 F.3d 177, 181 (5th Cir. 2002) (citing Tucker v. Branker, 142 F.3d 1294, 1298 (D.C. Cir. 1998)). Given these holdings, and the facts of the instant case, this Court finds that, as a matter of law, no federal rights were created for Plaintiff by the PLRA. As such, any possible violation of 28 U.S.C. § 1915, by means of impermissibly high deductions

from Plaintiff's prisoner account, is not actionable under 42 U.S.C. § 1983. Consequently, Plaintiff's claim alleging violations of 28 U.S.C. § 1915, should be dismissed.[12]

### III. CONCLUSION

For the reasons stated above, it is respectfully recommended that Defendants' second motion for summary judgment (Doc. No. 101) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates Judges, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Dated: August 13, 2009                     By the Court:

---

[12]This is not to say that Plaintiff is not entirely without relief with respect to impermissibly high deductions from his prisoner account for costs assessed against him in conjunction with civil action 98-1724. Insofar as an unpaid balance for the costs still exists, Plaintiff can move that the United States District Court for the Middle District of Pennsylvania issue an order clarifying its original order taxing costs. Under DOC policy, such a clarification of an order from a United States District Court could not be ignored. See DC-ADM-005 ¶VI(B). This, it should be noted, was the remedy suggested by Mr. Maeyer in 2001. See Defs.' Second Mot. for Summ. J., Ex. 1 (Doc. No. 101-2), at 4. This Court lacks the power to amend the order of another district court.

                                                                      _____
                                                                      LISA PUPO LENIHAN
                                                                      United States Magistrate Judge

cc:    The Honorable David Terrence F. McVerry
        United States District Judge

        Kenneth Fortune
        AY-9297
        SCI-Frackville
        301 Morea Road
        Frackville, PA 17932

        Mariah Passarelli
        Email: mpassarelli@attorneygeneral.gov